UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

COMPASS BANK and )
VECTRA BANK COLORADO, N.A. )
)
    Plaintiffs, )
)
   vs. )     Case No. 4:12-cv-01059
)
EAGER ROAD ASSOCIATES, LLC, )
ALAN R. SKOP, DON C. MUSICK III, )
ADOLPHUS A. BUSCH IV, CITY OF )
BRENTWOOD, MISSOURI, and )
UMB BANK, N.A. )
)
    Defendants. )

## MEMORANDUM AND ORDER

Presently pending before the Court is Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. (Doc. No. 118.) The matter is fully briefed and ready for disposition.

## I. BACKGROUND

In this action, Plaintiffs Compass Bank and Vectra Bank Colorado, N.A. ("Plaintiffs") seek remedies in connection with the alleged breach of a contract and fraudulent inducement of that contract by Defendants Eager Road Associates, L.L.C., Alan R. Skop, Don C. Musick III, and Adolphus A. Busch IV ("Defendants"). The contract has two parts—a Settlement Agreement and a Mutual Release. The contract was agreed to by Plaintiffs and Defendants in September 2011. It was intended to end litigation between the parties, commenced in February 2010, arising out of a real estate development project in Brentwood, Missouri, and specifically out of the financing of that project. (First Amended Complaint (Doc. No. 107), hereinafter "Compl." ¶¶ 18-19.) Elements of the litigation have been before the Circuit Court of St. Louis County, Missouri and before this Court.

The litigation played out, ultimately, in state court in a matter captioned *Eager Road Assocs., L.L.C., et al. v. Compass Bank, et al.*, Case No. 10SL-CC00605, after this Court, in August 2011, dismissed the parties' disputes before it in favor of the state court action. *See Compass Bank v. Eager Road Assocs., L.L.C., et al.*, No. 4:10-cv-00413 (Doc. No. 222).

The Settlement Agreement and Mutual Release have not ended the parties' disputes, as the parties are once again before this Court. The parties' current dispute concerns, at base, two provisions of the contract, contained within the Settlement Agreement, which Plaintiffs assert, require Defendants to tender to Plaintiffs (1) a $4.15 million "Developer Settlement Payment" and (2) a letter of credit—the "Developer Letter of Credit"—in the amount of $1.35 million payable to Plaintiffs. (Compl. ¶ 22.) Defendants' aforementioned payment obligations are conditions precedent to setting in motion a bond refinancing plan that is the end goal of the contract. (Compl. ¶ 23-25.) According to Plaintiffs, Defendants have failed to meet these payment obligations—the "only material steps remaining" to complete the bond refinancing contemplated under the contract. (Compl. ¶ 29.)

Plaintiffs have asserted four claims against Defendants: (1) specific performance of the parties' contract (Count I); (2) breach of the parties' contract (Count II); (3) breach of the covenant of good faith and fair dealing (Count III); and (4) intentional misrepresentation and fraudulent inducement (Count IV). Defendants have moved to dismiss all four claims against them. Because the gist of this action sounds in contract rather than tort, Defendants' motion will be granted in part and denied in part, for the reasons discussed below.

## II. JURISDICTION

Judgment in the parties' state court action was entered on September 27, 2011, noting dismissal of that action by the parties. Defendants suggest that, in order to seek enforcement of the contract, Plaintiffs were obligated to proceed via a collateral action in state court. *See* Memorandum

in Support of ERA Defendants' Motion to Dismiss First Amended Complaint (Doc. No. 118-1, hereinafter "Defendants' Opening Br.") at 18-19.  Defendants are incorrect.  Plaintiffs could have brought a collateral action in state court (*see generally Garrison v. Nichols*, 908 S.W.2d 373 (Mo. Ct. App. 1995)), but this was not required.  The Court has jurisdiction over the present dispute because, although it concerns an agreement to end litigation in state court, the amount in controversy exceeds $75,000 and there is complete diversity between the parties.  *See, e.g.*, *Leatherworks P'ship v. Bark Realty*, 247 Fed. Appx. 676, 681 (6th Cir. 2007) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994)) (where diversity requirements are met federal court may hear action for breach of agreement that settled state court action).

## III.  LEGAL STANDARD

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally, in the light most favorable to the plaintiff.  *See Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (citing *Luney v. SGS Auto. Servs.*, 432 F.3d 866, 867 (8th Cir. 2005)).  The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party."  *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citing *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001)).  To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  While a complaint attacked under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

Further, Rule 9(b), applicable to the fraudulent inducement claim here, requires that circumstances constituting fraud be pleaded with particularity. Fed.R.Civ.P. 9(b). Thus, a party complaining of fraud must allege "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (citations omitted). This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001). The level of particularity required depends upon, *inter alia*, the nature of the case and the relationship between the parties. *Payne v. United States*, 247 F.2d 481, 486 (8th Cir. 1957). Rule 9(b) should be read "in harmony with the principles of notice pleading." *Schaller Tel. Co.*, 298 F.3d at 746 (quoting *Abels*, 259 F.3d at 920).

## IV. DISCUSSION

### A. Breach of Contract and Specific Performance (Counts I and II)

To state a cause of action for breach of contract under Missouri law, a plaintiff must allege: (1) the making and existence of a valid and enforceable contract, (2) the right of the plaintiff and the obligation of the defendant thereunder, (3) a violation thereof by the defendant, and (4) damages resulting to the plaintiff from the breach. *See Gilomen v. Sw. Mo. Truck Ctr., Inc.*, 737 S.W.2d 499, 500-01 (Mo. Ct. App. 1987) (citing *U.S. Suzuki Motor Corp. v. Johnson*, 673 S.W.2d 105, 106 (Mo. Ct. App. 1984); *Johnson v. Great Heritage Life Ins. Co.*, 490 S.W.2d 686, 691 (Mo. Ct. App. 1973)).

Plaintiffs and Defendants agree that the first element—a valid and enforceable contract—is satisfied. *See* ERA Defendants' Reply in Support of Their Rule 12(b)(6) Motion to Dismiss

Plaintiffs' First Amendment Complaint (Doc. No. 142) at 13 n.3 ("ERA's position with respect to the Settlement Agreement is [that] the Parties all entered into *a valid and enforceable settlement agreement*, which is *binding* upon them, including Plaintiffs and ERA.") (emphasis added); Compl. Exh. B. at 1 ("Each of the Parties hereby acknowledges and agrees to the terms and conditions set forth in the Settlement Agreement, and *each Party agrees that the Settlement Agreement is binding and enforceable against it or him*.") (emphasis added). Plaintiffs proceed to satisfy the remaining elements, alleging that (1) Defendants agreed to tender the Developer Settlement Payment and Developer Letter of Credit to Plaintiffs (Compl. ¶¶ 22, 25), (2) Defendants have "failed and refused to make the Developer Settlement Payment or to deliver the Developer Letter of Credit" (Compl. ¶ 26);[1] and (3) Plaintiffs have been damaged in not less than the combined amount of the heretofore unpaid Developer Settlement Payment and the Developer Letter of Credit (Compl. ¶ 40).

Although a substantial portion of Defendants' briefing is devoted to the meaning of Fed.R.Civ.P. 8 in the wake of *Twombly* and *Ashcroft v. Iqbal*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court is not persuaded that pleading a simple breach of contract claim has become a rigorous undertaking or an exact science. Plaintiffs have stated a cause of action for breach of contract under Missouri law. *See, e.g., BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 689 (8th Cir. 2003) ("The allegations that BJC had a binding agreement with Columbia, that Columbia

---

[1]     While Defendants make much of the fact that the contract does not set a date certain for performance (*see* Defendants' Opening Br. at 20), this does not render the contract unenforceable. *See Vulgamott v. Perry*, 154 S.W.3d 382, 390-391 (Mo. Ct. App. 2004) (citing *Raskas Foods, Inc. v. Southwest Whey, Inc.*, 978 S.W.2d 46, 50 (Mo. Ct. App. 1998)) ("A contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning.") Moreover, should the parties dispute the time by which performance was to be tendered such disagreement does not provide a basis to dismiss Plaintiffs' breach of contract claim. *See Beuc v. Morrissey*, 463 S.W.2d 851, 854-55 (Mo. 1971) (a contract silent as to time of payment may be enforced via (1) a legally imposed term such as within a reasonable time or (2) parol evidence to establish an agreed upon time).

breached the agreement, and that BJC suffered injury as a result of the breach, are sufficient to satisfy the requirements of Rule 8(a).").

Plaintiffs seek alternative remedies in connection with their breach of contract claim—specific performance (Count I) and money damages (Count II). There is no meaningful dispute between the parties whether Plaintiffs' breach of contract claim, if pleaded adequately, may entitle them to damages. Defendants contend forcefully, however, that Defendants are not entitled to specific performance. *See* Defendants' Opening Br. at 17-21.

The Court finds Defendants' argument concerning specific performance perplexing. First, in conjunction with this argument, Defendants claim that Plaintiffs must pursue enforcement of the Settlement Agreement by way of collateral action in state court. *See id.* at 18-19. Yet, under Missouri law, the route proposed by Defendants is *per se* an action for specific performance. *See Precision Invs., L.L.C. v. Cornerstone Propane, L.P.*, 220 S.W.3d 301, 303 (Mo. 2007) (en banc) ("A motion to compel settlement adds to a pending action a collateral action for specific performance of the settlement agreement.") Further, Defendants offer no support, within the settlement enforcement context, for the strict standard they believe applies to Plaintiffs' specific performance claim—particularly Defendants' contention that Plaintiffs must demonstrate the absence of an adequate remedy a law.[2] Defendants' lack of such authority follows from common sense. As noted,

---

[2]       Basic principles of contract law govern the enforcement of a settlement agreement. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (citing *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 623 (8th Cir. 2001); *Sheng v. Starkey Labs.*, 53 F.3d 192, 194 (8th Cir. 1995)). Under Missouri law, a party seeking specific performance of a settlement agreement bears the burden of demonstrating the existence of the agreement by clear, convincing, and satisfactory evidence. *Vulgamott*, 154 S.W.3d at 388; *B–Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. Ct. App. 1998). To enforce a settlement agreement the parties must have reached agreement on the essential terms of the deal. *Sheng*, 117 F.3d at 1083; *Miess v. Port City Trucking, Inc.*, 2012 WL 401050, at *3 (E.D. Mo. Feb. 8, 2012). If the essential terms have been agreed upon, a party's decision "after the fact that a contract is not to its liking does not provide a reason to suppose that a contract was not in fact formed or to release that party from its obligation." *Visiting Nurse Ass'n, St. Louis v. VNAHealthcare, Inc.*, 347 F.3d 1052, 1055 (8th Cir. 2003).

under the Missouri procedure Defendants advocate, an action to enforce a settlement agreement sounds in specific performance. Settlement agreements routinely require one party to tender money to another party. Enforcement of a settlement agreement via the equitable remedy of specific performance thus will entail, quite often, an order that money change hands between parties.

In short, were Plaintiffs to have proceeded by collateral action in state court, specific performance and damages would have been virtually one and the same, though circumstances might in fact have rendered specific performance the preferred remedy. For instance, in *Luker v. Brockmiller*, 622 S.W.2d 715 (Mo. Ct. App. 1981), Defendants appealed after the trial court ordered specific performance of the parties' settlement agreement, embodied in the final judgment of that action. Defendants contention on appeal was that the trial court erred because plaintiffs had an adequate remedy at law. The appellate court disagreed, observing that "[s]pecific performance ... is preferred when it will accomplish more complete and efficient justice." *Id*. at 716 (citing *State ex rel. Dowd v. Turpin*, 576 S.W.2d 754, 755 (Mo. Ct. App. 1979)). Specific performance was preferred in *Luker* because defendants had refused to perform at all under the settlement agreement. In light of such circumstances, in the court's view, had damages been granted rather than specific performance "collection of [the awarded] monies could require a continuous struggle." *Id*.

In the instant case, at this juncture in the litigation, having stated a claim for breach of contract, Plaintiffs are permitted to proceed under both theories of recovery pleaded. *See, e.g.*, *Prindable v. Walsh*, 69 S.W.3d 912, 917 (Mo. Ct. App. 2002) (plaintiff stating claim that with evidence might entitle him to a remedies of specific performance or damages was free to seek both in the alternative). Of course, Plaintiffs may be required to elect between remedies prior to trial to avoid double recovery or an inconsistent verdict. *Id*. But not until evidence is presented regarding

Plaintiffs' claim of entitlement to specific performance can the Court dismiss this theory of recovery. *Id*.

Therefore, Defendants' motion to dismiss Counts I and II is denied.

## B. Breach of the Covenant of Good Faith and Fair Dealing Claim (Count III)

Missouri courts adopted the implied duty to deal in good faith in *Martin v. Prier Brass Manufacturing Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. 1986), following the standard set forth in the Restatement (Second) of Contracts § 205 (1981). *See Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000) (discussing the development of this cause of action under Missouri law). Missouri law implies a covenant of good faith and fair dealing in every contract. *Martin*, 710 S.W.2d at 473 (Mo. Ct. App. 1986). This covenant encompasses "an obligation imposed by law to prevent opportunistic behavior, that is, the exploitation of changing economic conditions to ensure gains in excess of those reasonably expected at the time of contracting." *Spencer Reed Group, Inc. v. Pickett*, 163 S.W.3d 570, 574 (Mo. Ct. App. 2005). And it requires parties to cooperate with one another to enable performance of expected contractual benefits. *See Schell v. LifeMark Hosps. of Mo.*, 92 S.W.3d 222, 230 (Mo. Ct. App. 2002); *Slone v. Purina Mills, Inc.*, 927 S.W.2d 358, 368 (Mo. Ct. App. 1996).

The implied covenant is not, however, a general reasonableness requirement. *See Schell*, 92 S.W.3d at 230. Nor is it "an overflowing cornucopia of wished-for legal duties." *Comprehensive Care Corp. v RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996). Despite its moralistic overtones, "good faith" does not import negligence principles into contract law. *See Mo. Consol. Health Care Plan v. Cmty. Health Plan*, 81 S.W.3d 34, 47-48 (Mo. Ct. App. 2002). The covenant is rooted in contract, not tort. *See id*.

The boundaries set by the duty of good faith are generally defined by the parties' intent and reasonable expectations in entering the contract. *See* Restatement (Second) Contracts § 205 cmt. a. Hence, "new obligations not otherwise expressed in a contract's terms" are not created by the covenant of good faith and fair dealing. *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 455, 466-67 (8th Cir. 2002) (quoting *Comprehensive Care Corp.*, 98 F.3d at 1066 (citing *Glass v. Mancuso*, 44 S.W.2d 467-68 (Mo. 1969))). Yet the covenant will act as "a gap filler to deal with circumstances not contemplated by the parties at the time of contracting." *Id*. at 467 (quoting *U.S. v. Basin Elec. Power Coop.*, 248 F.3d 781, 796 (8th Cir. 2001) (citations and quotations omitted)). Ultimately, "[s]ince good faith is merely a way of effectuating the parties['] intent in unforeseen circumstances, the implied covenant has nothing to do with the enforcement of terms actually negotiated and cannot block [the] use of terms that actually appear in the contract." *Id*. Therefore, "[a] court will not 'find an implied covenant if the parties have either dealt expressly with the matter or have intentionally left the contract silent on the point.'" *Giessow Rests., Inc. v. Richmond Rests., Inc.*, 232 S.W.2d 576, 579 (Mo. Ct. App. 2007) (quoting *Crestwood Plaza, Inc. v. Kroger*, 520 S.W.2d 93, 97 (Mo. Ct. App. 1974)).

Here there is a critical element with which the parties have *not* dealt expressly by contract—a time or "date certain" triggering the initial performance of the parties' obligations and, more specifically, Defendants' obligation to tender to Plaintiffs the Developer Settlement Payment and the Developer Letter of Credit. *See* Defendants' Opening Br. at 20 ("the documents that Plaintiffs claim constitute the entire Settlement Agreement contain no date by which the ERA parties were required to perform anything"); Compl. at Exhs. A & B. The contract's silence in this regard is significant as, under Missouri law, the covenant applies squarely in circumstances where "by unilateral action" one party "improperly den[ies] the other party from expected benefits flowing from the contract." *Koger*,

28 S.W.3d at 412 (Mo. Ct. App. 2000); *accord Mo. Consol. Health Care Plan*, 81 S.W.3d at 45; *Morton v. Hearst Corp.*, 779 S.W.2d 268, 273 (Mo. Ct. App. 1989). This principle was analyzed and explained with great care by then-Judge Souter in *Centronics Corp. v. Genicom Corp.*, 132 N.H. 133, 562 A.2d 187 (1989) (cited as the "classic exposition of the common law duty of good faith" in *Schell*, 92 S.W.3d at 230), in which he observed that: "under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial portion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose in contracting." *Id.* at 193.

Plaintiffs allege that Defendants, in connection with the performance (or non-performance) of their contractual obligations, have exercised unilateral discretion to, *inter alia*, "act[] in bad faith in unduly delaying the agreed upon Bond Refinancing for more than a year after the Settlement Agreement and Mutual Release were executed," and that this conduct has frustrated Plaintiffs' expected benefits under the contract. (Compl. ¶¶ 43-44.) Under the Restatement-derived Missouri rule, this is a textbook allegation of breach of the implied covenant of good faith and fair dealing. *See* Restatement (Second) of Contracts § 205 cmt. d ("A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."); *Centriconics Corp.*, 562 A.2d at 192 ("under a contract leaving the time for performance unspecified, good faith limits discretion under a standard of commercial reasonableness").

Plaintiffs have, accordingly, stated a claim for breach of the implied covenant of good faith

and fair dealing. *See, e.g.*, *Icke v. Adams*, 2008 WL 4938413, at *11 (E.D. Mo. Nov. 14, 2008 (establishing elements of breach of contract plus defendant's bad faith exercise of its discretion under contract entitled plaintiffs to summary judgment on implied covenant claim under Missouri law).

The Court thus denies Defendants' motion to dismiss Count III.

## C. Fraudulent Inducement (Count IV)

Finally, Plaintiffs claim  that Defendants fraudulently induced Plaintiffs' entry into the Settlement Agreement and Mutual Release by representing, during negotiations, that (1) they "collectively had $4.15 million [*i.e.*, the amount of the Developer Settlement Payment] available in cash that would be paid to Plaintiffs in advance of the Bond Refinancing" and (2) they "could obtain a letter of credit in the amount of $1.35 million [*i.e.*, the amount of the Developer Line of Credit] from a BBB rated financial institution." (Compl. ¶ 46.)

The misrepresentations asserted by Plaintiffs correspond  precisely with the terms of the contract and with what Plaintiffs now claim is due to them thereunder.  In plain terms, Plaintiffs allege that Defendants misrepresented that they would meet obligations later incorporated into the contract—*i.e.*, that Defendants made a promise to keep a promise and yet broke both (substantively identical) promises.  Such a fraudulent inducement claim is precluded by Missouri's economic loss doctrine, as explained below.

"The economic loss doctrine bars 'recovery of purely pecuniary losses in  tort where the injury results from a breach of a contractual duty.'"  *Dubinsky v. Mermart, LLC*, 595 F.3d 812, 819 (8th Cir. 2010) (quoting *Zoltek Corp. v. Structural Polymer Group, Ltd.*, 2008 WL 4921611, at *3 (E.D. Mo. Nov. 13, 2008), *aff'd on other grounds*, 592 F.3d 893 (8th Cir. 2010)).  As the Eighth Circuit has explained the doctrine in greater detail:  "A fraud claim *independent of the contract* is actionable, but it must be based upon a misrepresentation that was *outside of or collateral to the contract*, such

as many claims of fraudulent inducement. That distinction has been drawn by courts applying traditional contract and tort remedy principles." *AKA Distrib. Co. v. Whirlpool Corp.*, 137 F.3d 1083, 1086 (8th Cir. 1998) (citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19–20 (2d Cir. 1996); *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1543 (11th Cir. 1990); *OHM Remediation Servs. Corp. v. Hughes Envtl. Sys., Inc.*, 952 F. Supp. 120, 122–23 (N.D.N.Y. 1997)) (emphasis added). "It has been borrowed (not always with attribution) by courts applying the economic loss doctrine to claims of fraud between parties to commercial transactions." *Id*. at 1086-87 (citing *Raytheon Co. v. McGraw–Edison Co., Inc.*, 979 F. Supp. 858, 870–73 (E.D. Wis. 1997); *Allmand Assocs., Inc. v. Hercules Inc.*, 960 F. Supp. 1216, 1227–28 (E.D. Mich. 1997); *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74, 76–78 (Fla. Dist. Ct. App. 1997); *Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich. App. 365, 532 N.W.2d 541, 544–46 (1995)).

Two critical factors in examining whether a fraud claim is independent of a contract claim under the economic loss doctrine are (1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract (*see AKA Distrib.*, 137 F.3d at 1087 (alleged misrepresentations concerned "a term of the contract" and were therefore not actionable)) and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud (*see Bridgestone/Firestone*, 918 F.3d at 20 (citing cases) (to be actionable a fraud claim must "seek special damages that are caused by the misrepresentation and unrecoverable as contract damages")).

Plaintiffs allege that Defendants made pre-contract misrepresentations with respect to their ability to perform obligations that became part of the parties' contract. These asserted misrepresentations—concerning subject matter incorporated within the four corners of the contract—are insufficient to state a claim for fraud. *See AKA Distrib.*, 137 F.3d at 1087;

*Bridgestone/Firestone*, 137 F.3d at 19-20 (citing cases) ("intentionally-false statements … indicating [a party's] intent to perform under the contract [are] not sufficient to support a claim of fraud"); *Turnbull v. Kling*, 1999 WL 672561, at *5 (S.D.N.Y. Aug. 26, 1999) (noting that claim defendant fraudulently induced plaintiff to enter into settlement agreement by misrepresenting its ability to make payments pursuant to agreement "is a classic example of a contract claim disguised as fraud").

Further, Plaintiffs fail to state a viable fraud claim because Plaintiffs do not adequately assert additional damages outside those recoverable in connection with their breach of contract claim.[3] *See* Compl. at 15-16 and n.1; *see also Dubinsky v. Mermart, LLC*, 2009 WL 1011503, at *6-7 (E.D. Mo. Apr. 15, 2009), *aff'd on other grounds*, 595 F.3d 812 (8th Cir. 2010) (citing *Zoltek Corp.*, 2008 WL 4921611, at *4; *Self v. Equilon Enterprises, LLC*, 2005 WL 3763533, at *11 (E.D. Mo. Mar. 30, 2005)) (dismissing fraudulent inducement claim where "plaintiffs suffered no damage outside of what was due to them under the contract").

As a result of these deficiencies, Plaintiffs fail to state an actionable fraud claim, and Defendants' motion to dismiss Count IV is granted.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. 118) is **GRANTED** in part and **DENIED** without prejudice in part, in accordance with the foregoing.

**IT IS SO ORDERED.**

---

[3]   Plaintiffs do seek, but only in a skeletal and *pro forma* manner, punitive damages on their fraudulent inducement claim (Compl. at 15-16). Plaintiffs provide no basis for the Court to infer they may be entitled to punitive damages or could offer up such clear and convincing evidence as is required for an award of punitive damages. *Cf. Union Petrochem, Inc. v. Glore*, 498 F. Supp. 14, 14 (W.D. Mo. 1980) (under Missouri law parties seeking punitive damages must "allege[] sufficient facts in support of their claim for punitive damages to survive a motion to dismiss"); *Klein v. General Elec. Co.*, 728 S.W.2d 670, 671-72 (Mo. Ct. App. 1987) ("Plaintiffs' petition was insufficient for failure to allege with particularity their injury, specifically the viability of their punitive damage claim.").

Dated this 8th day of February, 2013.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE