# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **COMPASS BANK, et al.,** ) | |
| ) | |
| Plaintiffs/Counter-Defendants, ) | |
| ) | |
| vs. ) | Case No. 4:12CV1059JCH |
| ) | |
| **EAGER ROAD ASSOCIATES, LLC, et al.,** ) | |
| ) | |
| Defendants/Counter-Plaintiffs. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Exclude Purported Expert Testimony of Eugene Norber filed by Plaintiffs/Counter-Defendants Compass Bank and Vectra Bank Colorado, N.A. (jointly, the Banks). (ECF No. 208). The matter is fully briefed and ready for disposition.

## BACKGROUND

In the First Amended Complaint, the Banks seek damages for the breach of a Settlement Agreement between the parties arising out of an underlying lawsuit brought in this district. (ECF No. 107). The dispute underlying the prior lawsuit arose out of a complex financial transaction involving the development of commercial and retail property known as The Meridian at Brentwood (the Meridian Project). As relevant to the pending motion, the Banks allege Defendant City of Brentwood issued tax increment revenue bonds (the Bonds) to finance certain public improvements associated with the Meridian Project and to reimburse Defendant Eager Road Associates (ERA) for certain costs incurred by ERA in constructing such improvements.[1] (Id. ¶ 18). In September 2011,

---

[1] Individually named Defendants, Alan R. Skop, Don C. Musick III, and Adolphus A. Busch IV are members of ERA.

the parties agreed, through their respective attorneys, to enter into the Settlement Agreement. Additionally, in September 2011, each party executed the Acknowledgment and Acceptance of Settlement Agreement and Mutual Release of Claims (the Mutual Release), by which they confirmed and accepted the terms and conditions of the Settlement Agreement. (Id. ¶¶ 20-21).

The Banks further allege that at issue are two provisions of the Settlement Agreement and Mutual Release, whereby Defendants were required to (1) tender to Plaintiffs $4.15 million to purchase a portion of the Bonds (the Developer Settlement Payment), and (2) provide a $1.35 million letter of credit (Developer Letter of Credit), payable in three years. (ECF No. 107, Ex. A ¶ B(1)(a) and (b)). The Banks allege that the Settlement Agreement provided for Bond Refinancing, which involved either remarketing of Series 2007B Bonds or refunding both Series 2007A and Series 2007B Bonds (ECF No. 107 ¶ 23), and that, under the terms of the Settlement Agreement, delivery of the Developer Settlement Agreement and Developer Letter of Credit were conditions precedent to the Bond Refinancing. (Id. ¶ 25). According to the Banks, they have performed their obligations under the Settlement Agreement, but ERA has failed to meet its obligations as designated by the Settlement Agreement, including making the Developer Settlement Payment, delivering the Developer Letter of Credit, and completing the Bond Refinancing. (Id. ¶¶ 26-27).

For purposes of the instant lawsuit, ERA has disclosed Eugene Norber as a non-retained expert witness. ERA's expert witness disclosure states that the subject matter of Mr. Norber's testimony will be "payments made from trust accounts maintained" by Defendant UMB Bank. N.A., relating to the Series 2007B Bonds, "including, but not limited to, interest payments to bondholders from said accounts and payments for legal fees made from said accounts." (ECF No. 209.1 at 1). ERA's disclosure also states the following:

> **Summary of facts and Opinions:** Mr. Norber will testify regarding the interest payments made from the trust accounts for the 2007B Series bonds since September 9, 2011 and the applicable interest rate for each interest payment made since that date. Mr. Norber will opine as to the portion of the interest payments made to bondholders for the 2007B Series bonds since September 9, 2011 up to the time of the testimony that is attributable to the continued charging of a default rate of interest for the 2007B Series bonds after September 9, 2011.
>
> Mr. Norber will further testify as to the payments for legal fees made from the aforementioned trust accounts to attorneys or law firms representing Compass Bank and Vectra Bank in the period after September 9, 2011.

(ECF No. 209.1 at 2).

Additionally, ERA disclosed and provided the Banks with Mr. Norber's 2011 report. The report describes, among other things, the work performed in developing a study of the Meridian Project revenue projections and the work performed in developing "the 2011 estimates of tax revenues which could be generated" at the Meridian Project Site in the future. The report also provides Mr. Norber's opinion regarding: "the reasonableness of the information used to make th[e] projections" and of the projections themselves; the nature and severity "of the most recent recession"; and whether the City "had, or could have obtained the information" to make a determination in 2007 regarding the actual and projected revenue for the Meridian Project. (ECF No. 209.2 at 5).

In addition to his being president of Economic Development Resources, which firm was retained by ERA to provide the report, Mr. Norber stated that his qualifications include his being "retained in 2000 by a predecessor of the Developer to review various documents prepared by and for" the City regarding the Meridian Project Site and "projects proposed by the predecessor, and to create studies estimating the projects' sales and property taxes." (Id. at 5-6).

Also, in his 2011 report, Mr. Norber provided an "Overview of the Redevelopment Site," a

history of the development of the site, including how the development was funded, and a description of his role in the 2007 Study for the Site. In particular, Mr. Norber described his role in the initial studies for the project, in researching data pertaining to "sales per square foot," in calculating the estimated taxable sales created by tenants, and in preliminarily calculating assessed values and estimated real estate taxes payable from the site. (Id. at 2-18). Attached to Mr. Norber's report was the 2007 Study, which included an estimate of the future years' growth of the site's taxable sales. (Id. at 19-39).

## DISCUSSION

The Banks seek to exclude Mr. Norber's testimony on the grounds that (1) ERA incorrectly designated him as a non-retained expert rather than as a retained expert; (2) even if Mr. Norber was properly designated a non-retained expert, ERA's expert disclosure does not properly comply with the requirements for non-retained experts under Rule 26(a)(2)(C); and (3) given the subject of Mr. Norber's testimony, ERA failed to disclose any unique knowledge or expertise Mr. Norber has regarding trust accounts or payments made from trust accounts. (ECF No. 208 at 1-2).

ERA states the following in response. Mr. Norber is president of a financial consulting firm which specializes in urban planning and the financial aspects of public incentive financing, and on the Board of Directors of Hanley/Eager Road Transportation Development District (the TDD). ERA hired Mr. Norber in 1999 and 2000, and he worked with ERA on all facets of the TIF financing of the Meridian Project since then. Mr. Norber's personal involvement in the financing of the Meridian Project provides him with first-hand knowledge of the Project's finances, tax revenues, interest expenses, and all payments made into and from the trust accounts maintained by UMB relating to relating to the Series 2007B Bonds. Mr. Norber assisted in the determination that certain funds had

4

not been properly applied to the payment of the bonds, reviewed "countless bond runs related" to the Meridian Project, and consulted Stifel Nicolous (advisor to the City) on issues related to the Meridian Project. His work was reviewed by all parties during the refunding negotiations. (ECF No. 238 at 2-3).

In their Reply, the Banks do not dispute the factual statements made by ERA in their Response regarding Mr. Norber's role in the Meridian Project, but they cite as evidence of Mr. Norber's being a retained expert that he was designated as such in the prior federal litigation. The Banks also argue that ERA admits that Mr. Norber is not an employee, and thus, getting paid for his services; and he has not been designated to testify about ERA's finances, but rather about interest payments. (ECF No. 283).

Under Eighth Circuit law, "[d]ecisions concerning the admission of expert testimony lie within the broad discretion of the trial court." Anderson v. Raymond Corp., 340 F.3d 520, 523 (8th Cir. 2003) (internal quotations and citation omitted). As a preliminary matter, "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." Sappington v. Skyjack Inc., 446 F.Supp.2d 1059, 1061 (W.D. Mo. 2006) (internal quotation omitted). The starting point for analyzing expert testimony is Federal Rule of Evidence 702, which provides, in relevant part, that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

Pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the seminal case regarding expert opinion testimony, "district courts are to perform a 'gatekeeping' function and

insure that proffered expert testimony is both relevant and reliable." Dancy v. Hyster Co., 127 F.3d 649, 652 (8th Cir. 1997) (citations omitted)); see also Daubert, 509 U.S. at 592-93. As stated by the Eighth Circuit in Lauzon v. Senco Products, Inc., 270 F.3d 681, 686-87 (8th Cir. 2001):

> Daubert provides a number of nonexclusive factors a court can apply in performing this role: (1) whether the theory or technique 'can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. . . . Daubert's progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case.

(internal quotations and citations omitted).

A retained or specialty expert is "an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." Downey v. Bob's Disc. Furniture Holdings, 633 F.3d 1, 6 (1st Cir. 2011). A non-retained expert is one whose testimony arises from his or her involvement in events giving rise to the litigation. See id.; cf. Fielden v. CSX Transp., Inc., 482 F.3d 866, 869 (6th Cir. 2007). Fed. R. Civ. P. 26(a) requires disclosure of the identity of persons likely to have discoverable information relevant to disputed facts, a copy of all documents relevant to disputed facts in the party's possession or control, and the identity of any person who may be used to present expert testimony. Rule 26(a)(2)(B) requires production of an expert report from any retained expert. See Crump v. Versa Prods., Inc., 400 F.3d 1104, 1110 (8th Cir. 2005) (Rule 26(a)(2)(B) requires disclosure of retained witness must be accompanied by written report prepared and signed by witness). Rule 26(a)(2)(B) disclosures, however, are not required for non-retained experts. See Brandt Distrib. Co., Inc. v. Fed. Ins. Co., 247 F.3d 822, 825-26 (8th Cir. 2001) (failure to disclose opinion of fire captain who conducted investigation and prepared report in his official

capacity that fire was fraud and set for fraudulent purposes was not required and did not violate Rule 26(a)(2)(B)); see also Fielden, 482 F.3d at 869 (Rule 26(a)(2)(B) does not require expert report from treating physician where proposed testimony addressed causation of plaintiff's injuries; permitting treating doctor to testify on causation in such context is consistent with the Rules plain language). Fed. R. Civ. P. 37(c)(1) forbids a party from using undisclosed opinion of a retained expert at trial. See Crump, 400 F.3d at 1110; Brandt, 247 at 825.

The Court finds that Mr. Norber was properly designated a non-retained expert. He was contacted and consulted to address an ongoing issue for which he has specialized expertise, and he was actively involved in financial matters related to the funding and development of Meridian Project. See e.g., Downey, 633 F.3d at 6 (exterminator testifying as to causation from his own first-hand observations akin to treating physician for purposes of Rule 26); Guarantee Trust Life Ins. Co. v. Am. Med. & Life Ins. Co., 2013 WL 4714146, at *2-3 (N.D. Ill. 2013) (treating physician is only retained expert where he "gives opinions beyond scope of his own observation"; "Non-retained experts must only testify about opinions that were formed during the course of their participation in the relevant events of the case"; finding Defendant's chief financial officer who was subsequently retained as consultant was non-retained witness who could testify based on his personal knowledge of facts and data at issue in litigation). The case which the Banks cite in support of their argument that Mr. Norber's being paid precludes his being a non-retained expert, United States v. Sierra Pacific Industries, 2011 WL 2119078, *5 ( E.D. Cal. May 26, 2011), holds only that an expert's being paid is a factor to be considered when determining the status of an expert; it is not determinative. Finally, Mr. Norber's previously holding himself out as a witness for hire is not determinative of whether he is a non-retained expert for purposes of the pending matter.

Because Mr. Norber was properly designated a non-retained expert by ERA, the Court finds that ERA's expert witness disclosure regarding Mr. Norber was sufficient as it provided a "summary of the facts and opinions" about which he is expected to testify, including payments made from trust accounts maintained by UMB relating to the Series 2007B Bonds. See Fed. R. Civ. P. 26(a)(2)(C)(I)-(ii)) (for witness who is not required to provide written report, disclosure must state "subject matter on which the witness is expected to present evidence and summary of facts and opinions to which witness is expected to testify").

Accordingly,

**IT IS HEREBY ORDERED** that the Banks' Motion to Exclude Purported Expert Testimony of Eugene Norber (ECF No. 208) is **DENIED**.

Dated this 28th day of October 2013.

/s/Jean C. Hamilton
United States District Judge